Good morning again, Your Honor. I'm Kim. Yes. James Crawford again from Mr. Cardenas-Diaz. Your Honors, I think we need to start, I'm going to try to go chronologically in time, because there's a lot going on here and a lot that's happened over the years. But I believe it starts with Macmillan v. Pennsylvania, where the United States Supreme Court coined the phrase, sentencing factor. And I believe it was Macmillan v. Pennsylvania that basically put the state of the law in flux, and I'm hoping now that the U.S. Supreme Court, beginning with Apprendi v. New Jersey, Blakely v. Washington, and the most recent case of Booker v. United States, is going to straighten out and organize the uncertainties that Macmillan had caused. Macmillan coins the phrase, sentencing factor, basically distinguishing an element of the offense from a basic sentencing factor. There are some recent cases, as the Court knows in Apprendi, the Court held other than the fact of a prior conviction, any fact used to enhance a defendant's sentence has to be alleged in the indictment or information and proven or submitted to a jury beyond a reasonable doubt. Blakely clarified Apprendi, because Blakely basically indicated the statutory maximum is not life or whatever the maximum that is articulated in the code section, but rather it's the maximum punishment that can be opposed based upon facts found by the jury, find or fact or admitted to by the defendant, and a plea colloquy. And then Booker recently indicated that Blakely extends and does apply to the U.S. sentencing guidelines. The recent case cited by the government, the AUSA was kind enough to send the Court a couple of recent cases. It cited to the Court United States v. Dare. In Dare, the Ninth Circuit, this Court basically indicated it's hard to reconcile Harris v. United States, which basically applied Macmillan v. Pennsylvania in holding that Apprendi v. New Jersey has no application to mandatory minimums, but rather only to the maximum sentences. I believe, and I'm going to agree with Justice Thomas for once, that actually not only should the fact finding required under Apprendi apply to the statutory maximums as articulated in Blakely, but it also should apply to the floor that a court can impose, basically the imposition of a mandatory minimum based upon facts not found by a jury or admitted. But do we have a case on that that says that, or are you just anticipating what the Supreme Court will do? A case. In the future. Yeah. I mean, what's the best case to say that? Well, the best case, I believe, is we have the case of United States v. Glasgow Heredia, and that's cited at pages 12 to 13 of the opening brief. Well, Glasgow Heredia turned on the fact that the enhancement in question not only raised the floor, but raised the ceiling. Yes. Is that true here? Yes. Because in this particular case, we have 21 U.S.C. 841 v. 1 capital A little Roman numeral 8, requiring at least 50 grams of methamphetamine to impose the mandatory minimum of 10 years maximum's life. But, for example, we also have 21 U.S.C. 841 v. 1 capital B Roman numeral 8 in little letters. And under that code section or provision, possession of 5 grams or more of methamphetamine is punishable by a sentence in a range of 5 years to 40 years, for example. Where is the range? There are different ranges. But I think more importantly, what I want to focus the court on and direct the court's attention to this, is it took, I thought, long and hard. I mean, after reading U.S.A. v. Dare, thinking that I could get up here and actually argue something. But, you know, it's better than it looks. Because if we look at McMillan, we look at Harris v. United States, and we look at United States v. Dare, we're looking at the mandatory minimum sentence that a court imposed pursuant to 18 U.S.C. section 924. The presence of or the use of a firearm. The cases all dealt, every one of those cases, beginning with McMillan, dealt with a mandatory minimum sentence of 5 years if the accused, quote, visibly possessed a firearm, end quote. So that starts with McMillan. Then you go to Harris v. United States. That case involved a subject who basically exhibited or used a firearm during the commission of a drug offense. Dare, which I'm more familiar with, in Dare, the defendant had a friend that was with an undercover informant wanting to buy drugs. They go back to his house. The drug transaction occurs. The defendant's inebriated. He goes into his backyard and starts shooting a gun at or near a field of hay or something like that, a pile of wood or something. And that was the issue. Was that part of the drug transaction? And the Ninth Circuit held that it was ultimately. But that was for purposes of imposing the mandatory minimum under 18 U.S.C. section 924. In this particular case, we're not dealing with imposition of a mandatory minimum under 18 U.S.C. 924. We're dealing with the imposition of a mandatory minimum under 21 U.S.C. 841. So you're saying, oh, the difference is it's a different statute, so it doesn't work. It's a different statute. And therefore. I'm sorry? And therefore. Well, what's more important is, as the Court well knows, in Ameline 3, Ameline 2, Ameline 1, the Ninth Circuit has held that the quantity of drugs is not merely a sentencing factor. That's why I was giving you that preamble in the beginning. But the quantity of drugs is not merely a sentencing factor. Whereas the discharge of a gun or the possession of a gun or the exhibition of a gun, according to these cases that I'm not going to agree with. But what Buckland said is, no, never mind. It doesn't matter what you call it. And I don't see why you'd call it anything different or care about what you called it any more in the drug cases than in the firearm cases. Because the firearm cases, for some odd reason, the courts have stated that the exhibition of the firearm or the discharge of the firearm is a sentencing factor. It's not an element to find guilt. Let me ask a different set of questions. In this case, did the defendant ever challenge the — didn't the defendant, in effect, stipulate to the 500, to the amount at the sentencing? Not at the plea. I understand he didn't at the plea, but at the sentencing. He didn't object to the — well, he filed a notice of appeal. Yes, sir. He agreed that the mandatory minimum was correct. Why isn't that agreeing that he did, in fact, deal in the requisite amount? Well, I think we have to do — I think we're splitting the issues at this point. I want to — I think that's dealing with whether or not there was plain error, and then whether or not there was error, and whether the error was plain. I see. So you're — all right. Well, you get to it. All right. But for purposes of determining, you know — The problem we have is that — I mean, it doesn't look like McMillan and Harris may well not be along for this world. And the sense that there's some great tension between them and the Apprendi line of cases is widely shared, I would say, including by the panel and DARE. But we are this little — you know, we're a little panel in the little Ninth Circuit, and we — what do we have to say about it at this point is really the problem. I wouldn't — In other words, how could we, given DARE, given Harris, given McMillan, say anything different? Well, when you're looking at Harris and you're looking at McMillan and you're looking at DARE, all three of those cases, again, I mean, it's the beauty — All right. But you haven't — oh, you've given — What were you starting to say? I'm sorry? I'm sorry. I'm having trouble getting — you said — what is it about those three cases? Those three cases, again, when we're dealing with — you're indicating it's not for the Ninth Circuit. I know it's not for the Ninth Circuit to reverse a U.S. Supreme Court decision. The court doesn't have that ability, nor is it for the court to anticipate it being overruled. I mean, ever since Apprendi, people have indicated that they thought Elemandris Torres v. United States was going to be overruled. It has not yet happened, unfortunately, but one day maybe it will be. It should be. But in the meantime, it's tough for this court to overrule Harris or McMillan. However, I believe it is for the court to interpret the codes and interpret the statutes. And in every one of those cases, we're dealing with a mandatory minimum that was imposed based upon use, exhibition, or discharge of a firearm. And I believe that distinction is readily available. And the distinction, I guess, I think maybe we're all having trouble with, or at least I am, between the firearm and the A41 charge. I mean, why would that be different? Because for some reason or another, the cases have indicated they use that dirty word that came out of McMillan v. Pennsylvania, sentencing factor. And they've indicated that the discharge of the gun or the exhibition of the gun is a sentencing factor. And you're saying the drugs are not? Yes. I don't know how much that helps you, because if it's not a sentencing factor, what is it, an element? An element. Or you pleaded guilty to the crime, and you presumably plead guilty to the elements of the crime. But he didn't admit to the quantity. And the Court accepted the plea notwithstanding the failure to admit to the quantity. If we look at U.S. v. Gonzalez. I guess if it's an element and it's pleaded. It is an element. But if you plead guilty, I don't know that that argument helps you much. I see this being basically, U.S. v. Gonzalez, U.S. v. Valencia, is the Ninth Circuit case that said drug quantity is an element which must be proven beyond a reasonable doubt or admitted to by the defendant. When the Court took the plea. And we still have cases saying that you don't admit to the amount when you plead guilty, I guess, so. He didn't admit to the amount. And then is the plea, was the plea incomplete? The district court accepted the plea. The government didn't object to the plea. The plea was not complete because he did not admit to each element. At the time of sentencing, he didn't object to the computation of it and admitted what the range was. There was a mandatory minimum. I mean, what else can you do? This attorney filed a notice of appeal and challenged the sentence, and I'm here today. And, you know, based upon that, obviously, he was not happy with the sentence he received. Otherwise, he would never have appealed it. It was not agreed upon disposition. I mean, this is different from the Thomas case where the guy essentially was pulled through the sentencing screaming that he wanted to trial and all this other stuff and did not admit it, right? That would definitely be different because then the plea may not even be knowing and intelligent. It sounded like something along those lines would be forced or coerced. But in this particular case, a plea has to be to all of the elements of the offense. And if we're going to look at it as his admission, and then it was an incomplete admission because he did not admit to a quantity. The AUSA didn't object to this procedure at the district court level. He allowed the defendant to file this written memorandum basically indicating that he drove a red vehicle and a red truck and pulled up and showed a large quantity of a white substance to the informant. And based upon that, he was subsequently arrested. Do you know the Buckland case? No, I don't. Well, that's not very useful because Buckland is about age 41. Buckland, yes, yes. And it is about age 41. And it does say that it doesn't not, that this verbiage is not very important. The other cases that you're saying – and so that's this statute. The cases that you're saying call it a sentencing factor in this statute, are they post-Buckland? Yes. The – well, Buckland was what, I think 2002, if I recall. That held that age 41 was not facially unconstitutional in light of Apprendi v. New Jersey. In part on the ground that we're not going to get into the sentencing factor, non-sentencing factor. It doesn't matter. But for some reason, these cases, the series of U.S. Supreme Court, you know, McMillan and Harris, both from the U.S. Supreme Court and the recent U.S.A. v. Dare decision have indicated and they've emphasized that it is a sentencing factor. They've emphasized that the firearm possession is a sentencing factor. They're the ones that are making the ado of it, not me. I'm just simply coming here telling you what I have interpreted from reading these cases. And I believe that they're going to make something out of the fact that it is a sentencing factor. I mean, if we look at what – where is that? If we look at the quotation, here's a quotation from Harris. If we're going to say Harris is just wrongfully decided, Harris, when it was decided, it said at page 565, the judge may impose the minimum, the maximum, or any sentence within the range. Well, as we all know, under Blakely v. Washington, that's completely inappropriate and wrong because the court can't just impose – the district court can't just impose the maximum because it's based upon facts unless it's based upon facts that were alleged in the indictment or information proven to a jury beyond a reasonable doubt or admitted to by the defendant. And that's Blakely. And so, I mean, I can obviously get up and agree with Judge B in his dissents in every one of these cases where he's indicating that McMillan – excuse me, Harris v. United States is no longer good law. In light of Blakely, it's completely inconsistent. It sounds like Plessy v. Ferguson in this day and age. That's how inept the decision is, but I know it's not for this court to overrule the decision. It's for the U.S. Supreme Court to do its job and to take care of that function. However, the fact of the matter is the court can and does have the ability to narrowly interpret the decision as it is articulated. Every one of these decisions, McMillan, Harris, and Dare are gun offenses. And they're 18 U.S.C. 924. They're different mandatory minimums. They involve different findings. And for some reason, these courts indicate that there is – what is that term again? Sentencing factors. They emphasize the term sentencing factor, and it's not an element of a crime. So based upon that, we have all indicated in Ameline 3, Booker v. United States or U.S. v. Booker, and there's a recent U.S. decision from U.S. v. Gonzales. It's on the Second Circuit, where the Second Circuit, in quotes, it's held that after apprehending drug quantities are not merely a sentencing factor, but, quote, elements of aggravated offenses defined by reference to those statutes, end quote. So that's U.S. v. Gonzales. If the court likes, I could file a letter with that citation. But that's from the Second Circuit in New York. So based upon that, these cases have been – I think the distinction is for some strange reason, and it's an oddity, as the court indicated. Why is it there? I don't know why it's there. But the distinction is there. Gun offenses for some strange reason, the discharge of the firearm, the exhibition of the firearm, for some reason the courts are continuing to call that a sentencing factor under 18 U.S.C. 924, whereas the courts have clearly indicated under Ameline, Gonzales, Battery 9th Circuit, and even Booker by the U.S. Supreme Court, that the quantity of drugs is not a sentencing factor, but it's essentially an element of the offense that goes to the nature of the charge. And I believe based upon that, there's a distinction. And that distinction can result in the narrow interpretation of Harris, as it should be interpreted at this point in time, until it reaches its own demise when the U.S. Supreme Court addresses it. So unless the Court has any other questions. Okay. So you're not going to address the application question? Oh, with regard to whether or not it's prejudicial or not? With regard to whether or not there was a – well, essentially whether or not it's prejudicial, I suppose. I mean, whether or not he essentially sticks to the amount in a sentencing hearing. Oh. Well, essentially it would be whether or not it would be plain error, whether or not it would be against the judicial integrity for a sentence to be imposed based upon a fact that was not admitted to. I'm asking whether it was admitted to. It was not admitted to. He never admitted to the quantity. And if he doesn't admit to the quantity, it would be imperfect. Well, within the PSR, there's a rule – there's a set of procedures in which you challenge the PSR. We're objecting to the PSR. He didn't do that. Yes. And then – but I believe in this – Is that correct? He did not do it? No. There are no objections to it. He said that the minimum was correct. He didn't object to it, but he didn't proceed to it. I thought he specifically said it was correct. I don't recall that. But in this case, he did not admit during – at the time of the plea when it was most – Plea. I'm talking about the sentence. The time of sentencing. I don't recall him making any – I don't know if a sentencing brief was filed by the defense or not at this point in time. But the fact of the matter is, again, if it's not admitted to under oath during a plea – Well, that's the question. So you're saying that it has to be – and this is a legitimate question, but an important one. Is it sufficient that he, within the parameters of the sentencing scheme, have admitted it by not objecting and being deemed to have admitted it? Or for present purposes, do we have to say it has to come out of his mouth, essentially? Well, I believe in some way or another it would have to come out of his mouth, either in writing through his attorney or some type of written or oral concession that the quantity was proven and was properly admitted to. I believe that's what a perende goes back to. Not objecting at the time of sentencing, I mean, I would rather take care of the matter now than rather having him do his 2255 petition later, too, because maybe there's other arguments that may come to light in that regard with whether or not he received adequate representation and whether counsel should have objected in the PSR. And it raises those issues as well. Is there any authority with respect to the nature of an admission for Sixth Amendment Blakeley-Booker purposes, whether it can be essentially an admission, sort of a deemed admission, or whether it has to be an admission as to which we can judge knowing involuntariness because it comes out of us on that? You mean like an implied admission rather than an express admission? It's essentially implied because the statute says that if it's in the PSR and you don't object, you essentially admit it. Again, I'm not going to go back to it. I still believe that it should be admitted to openly in court during a plea colloquy rather than deemed a concession to a PSR based upon facts that were not admitted to. Remember, the facts that are included within the PSR are facts that were not proven to a jury, facts I don't recall, I don't believe that the quantity was alleged in the indictment, I don't recall, but I don't believe it was alleged in the indictment, and facts that were not admitted to by the defendant under oath during the plea colloquy. And when they set this written, what was it, a version of facts of how the offense occurred, there was no objection then by the government either as to the failure to admit to a quantity of drugs. And I believe based upon that, I think that's when it should essentially have occurred because now we're just imposing sentence based upon what the plea is about. And a sentence is based upon the facts that occurred during the plea because remember what Blakely and Apprendi say is it's the facts that were proven to a jury beyond a reasonable doubt or admitted to by the defendant, not facts that are contained in a probation and sentencing report that are not objected to by the defense attorney or by the defendant himself. And I believe the failure to object to a fact that's contained within a PSR, whether it's accurate, inaccurate, or not appropriate for the court's consideration, I don't believe undermines or weighs the claim that there was error, nor should it overcome a plain error analysis for purposes of determining if he should be entitled to a reversal and resentencing. I believe at the time that the court took the plea that it advised the defendant that he was charged with a possession of over 500 grams of meth. It did indicate something to that effect, but the defendant didn't. There's no admission to that. Yeah. But then anyway, that would indicate it's in the indictment, right? It might. It may be so. I don't remember. The court wouldn't have done it just off the sky. No. But I don't recall if it's in the indictment expressly or not. It may not matter to your argument, but I think it was in the indictment. Okay. Then I'm corrected with regard to that. But anyway, the fact that the defendant, while he was doing the plea colloquy, did not admit to the quantity, I believe, shows that, you know, Blakely and Prendy were not complied with. And the failure to object to a probation and sentencing report at the time of sentencing, I don't see how that would overcome the viability of the sentence. So unless the Court has any other questions, I would be prepared to submit. Thank you very much. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, Scott Carringer on behalf of the United States. To begin with, I'd like to address, just to clarify the factual question that was raised towards the end of defense counsel's argument. Both counts one and count two did allege that defendant was charged with offenses involving more than 500 grams. And in the overt acts section of the conspiracy counts in section one, it's alleged the specific amounts the defendant was responsible for as 896.6 grams that he handed in one bag to one of his co-conspirators, and then 1,353 grams of methamphetamine that the defendant was found with at the time of the arrest in the Nissan that he was driving, the red truck that he had missed to being in. That doesn't get you there, though, I guess, because if our decision, and I think it was Thomas, where we said pleading guilty even when the amounts alleged doesn't constitute an admission for purposes of sentencing. I would agree, Your Honor. And what I guess I'd like to do, if I may, address the overall landscape of the Harris and McMillan and then how Thomas fits into it, if I may. The government, I believe, has contributed to the confusion in this case by its over-reliance on the Harris decision. Which has? I'm sorry? Which has? The government has. I personally have. Our over-reliance on the Harris decision. I did not recognize the Velasco-Heredia decision and its impact on it, and I believe that it clearly demonstrates the difference between the three cases the defense counsel is citing, and it's not a question of whether it's sentencing factors versus elements. Harris is still good law, but Harris has been distinguished in this circuit by Velasco-Heredia on this basis. The fact that triggers the mandatory minimum in Harris, in Dare, and I believe in McMillan as well, also raises the statutory maximum. And in those cases, the defendant was therefore exposed to a higher statutory maximum as a result of that fact. Whereas in cases, I'm sorry, exactly, I misspoke. In those cases, those involve 924, in which the statutory maximum is life imprisonment regardless. In the cases that are unfortunately controlling in this case, but, I mean, sorry, they're controlling legal principles, but distinguishable, Velasco-Heredia, Thomas. Those cases, the fact of drug quantity increases both the minimum and the maximum. And in Velasco-Heredia, it specifically distinguishes Harris, and it provides that the mere exposure to that statutory maximum is what gives the apprendee problem. And, therefore, even though the defendant's sentence in those cases did not exceed what the original statutory maximum would have been, that's where the apprendee error falls. And the government agrees that Velasco-Heredia does provide the controlling legal principle that if a court may not find, by preponderance of the evidence, drug quantity, that if the not simultaneously increase the statutory maximum, that that fact must be either alleged in the indictment and proven to a jury or admitted by the defendant. And that applies here? That does apply here, I believe. And in this case, the government's position is that there was no error in the first place, and to the extent that there was any error, the defendant has not demonstrated plain error requiring reversal. And there's no error because? There's no error because defendant essentially admitted the drug quantity in this case. As the court. But not at the plea. I'm sorry? Not at the time of the plea. The government believes that he did at the plea as well. It's true that it did not specifically come out of his mouth, and it's, of course, it would have been a better practice for the court to ask the defendant, do you agree with the government's proffer of the factual basis and every fact in it? But the court did essentially that in asking whether counsel, both defense and government counsel, stipulated to a factual basis. In this case, the amounts were alleged in the indictment, and it was alleged in each count that there was, the offenses involved more than 500 grams of methamphetamine. Defendant was, indicated that he was pleading guilty to both of those counts and did not indicate, as in Thomas, which is where the court is identified, that he was in any way not pleading to certain portions of that. He said, I'm pleading to counts one and two. But he certainly, in giving his factual statement, which was a prepared and careful statement, stayed pretty far away from elucidating the amount. I don't know that that's the case, Your Honor. I think it was a short and simple statement. In terms of the amount, he admitted that he possessed a large amount. A large amount. In both bags. There's no dispute as to what was in those bags. And he wasn't. He could have said more than 500 grams because that was the indictment, and he didn't. He definitely could have, Your Honor, and there's no doubt. But he did it advisedly, advised to do it. I'm sorry? He seemed to have done it in order to avoid saying that. I don't know that I agree with that, Your Honor, and this is why. If he had, his positions at sentencing would have been very different. If he had, his position at the time of the plea would have been very different, in which he would have said, as many defendants do, I'm pleading guilty, but I'm not agreeing to those amounts. I'm not. And when the Court advises him that you are facing a mandatory minimum of 10 years because the amount's over 500 grams, do you still wish to go forward? And he says yes. I don't believe this issue was in his mind at all. This issue did not arise until Blakely came down and this case was on appeal. At that point, Blakely raised, obviously raised the profile of Apprendi type facts, and this case, the initial briefing was done under the guise of Blakely. I suppose one of the reasons he may not have stated the amount is because he didn't really know the amount. He knew it was a large amount, but he really couldn't say whether it was more than 500 grams, and he didn't. I suspect that other than the discovery that was provided to him, he may well not have known the exact amount. Right. So that was why you can't take that statement as being an admission of the 500 grams because, as Thompson, he probably didn't even know. So maybe he was going to wait and see what the PSR turned up. Your Honor, with respect to that, I don't know that I agree with that for this reason. As I say, the defendant, of course, has been provided discovery. He has the lab results. He knows what's found in there, and the government only moments before had signed exactly what was found in each of the components. There are three components to the total 4.3 kilograms of meth that the PSR identified. And each one, two of the three, the defendant expressly possessed himself, and he specifically said that he possessed two of those bags containing a large amount. The government indicated in its factual basis that one of those bags contained 896.6 grams of methamphetamine, and the other, which the defendant was found at the time of his arrest, was 1,353 grams of methamphetamine. There is no component, there is no possible bag or amount or substance in this case that the defendant could have possessed that would have been less than the threshold amount. So either bag had the threshold amount, had more than 500 grams? Either and both, yes, Your Honor. That's correct. It was abundantly clear throughout the change of plea that what we were talking about was offenses that involved more than 500 grams. The defendant was specifically advised of that. The defendant was told what the statutory maximums were for that, what the mandatory minimums were for that. He was explicitly advised of the facts of each of the components, and he still said that he wanted to go forward and plead guilty without indicating in any way that there were certain portions of this that he was not admitting. Well, suppose we were to disagree and think that Thomas is controlling us to this point. Is there another juncture at which he admitted? I'm sorry. Is there another juncture at which he admitted or could be taken to have admitted the amount?  As the court has identified, he did not object at sentencing in any way to the amounts. What happens is the PSR comes in. In this case, defendant did, in fact, file a sentencing position in which he stated that he had no objections to the amount cited in the PSR. As the PSR provided, the applicable amount was 4.3 kilograms of methamphetamine, more than eight times the required amount. And it also set forth the component parts of that 4.3 grams, two of which defendant admitted that he specifically possessed. And, again, each one of those was over 500 grams. So defendant submits his sentencing paper, and he states that he has no objections to it. He further agrees with the mandatory minimum being applicable, and he specifically asks the court to impose that mandatory minimum sentence, even though the sentencing guideline range would have been lower. The sentencing guideline range, because the PSR found that minor role applied, was much lower than that amount. And yet defendant still asked for that 10-year sentence because he was conceding that that 10-year mandatory minimum applied. Now, obviously, that isn't at the time of the plea. That is later on. And if the court were to find that there is error at the time of the plea in what he did not admit, what occurs at sentencing, for purposes of strictly whether there is error, the court may not believe that's controlling. That said, this is a plain error case. In the cases of Buckland, Valencia, and the United States Supreme Court's in Cotton, those are all specifically cases involving plain error where they found that because there was no objection at sentencing, because defendant essentially conceded at sentencing as to what the amounts were, and because the evidence was overwhelming and uncontroverted, that, one, not only were defendant's rights, substantial rights not affected, which was the Buckland decision, but also the fourth prong of the plain error analysis, which is did the, did any error that occurred affect the fairness, integrity, or public reputation of the proceedings? All three of those cases, Buckland, Valencia, and Cotton, all found that because there was no argument, even by defense counsel, that there was a way that you could get below the threshold amounts, and because it was uncontroverted and because in some of those cases it was stipulated to, that there was no effect on judicial proceedings, even if there was error. Do you go back to the plea proceeding for a minute? Do you put any reliance on the stipulation that the factual basis was established? What did that stipulation say, just that the factual basis has been established? Yes, Your Honor. I think that, I'm sorry. I didn't mean to cut you off.  I just wonder if that's all it said. The way it occurred was this. The court asked the government to set forth the factual basis, and the government read the lengthy factual basis into the record, which contained those facts. It then asked the defendant to state in his own words what he did, and he read his very short statement. After that, the government, the court asked both government counsel and defense counsel whether they stipulated to a factual basis, and both sides did. It is quite possible, and the government believes it's a fair reading, to read that as defendants stipulating to everything that was in the government's factual basis. There is also the argument, and I must concede, there is also the argument that the defendant could have been, if he had been thinking of this issue, could have been saying he stipulates to a factual basis for the elements of the offense, but is not necessarily agreeing to the amount. Obviously, the fact that he didn't identify that in this case, the government believes, is quite important. But at the same time, the stipulation to the factual basis, in all frankness, I cannot say is necessarily controlling. The government believes it's one of many factors that demonstrated throughout this change of plea and afterwards as to why the defendant essentially admitted these things if he did not specifically admit them. Kagan. I'm curious why you seem to be uncomfortable. You seem to think that if he didn't admit to it the plea agreement and only admitted to it at sentencing, let's suppose he had affirmatively admitted to it at sentencing. Would that be sufficient? I mean, you keep backing into a plain error approach to that, and I'm wondering why. Since this is only relevant at sentencing, why isn't admitting it at sentencing sufficient? I may have overstated that, Your Honor. You may know something I don't. I don't believe that I do, Your Honor. If the defendant does expressly admit it at the time of sentencing, I would agree. It's no different. Just as my argument before was just as a technical matter before the Court accepts the plea and as it's advising him of the mandatory minimums, it obviously makes sense that that's where it would occur. But the way this comes up in the case law has been in cases like Valencia, Cotton, and Buckland, where it's essentially looked at as the third and fourth prong of the plain error analysis. I would agree that if the defendant does admit to that amount expressly at the time of sentencing, it's really no different. I think the problem in those cases is that he was never told he could have a jury trial on the issue. But this guy was told that he could have a jury trial on the issue. He was. And so the real question is what are we going to take to be an admission, and what aren't we going to take to be an admission. And to me the issue, at least, is whether a failure to contest the pre-sentence report in the circumstance in which there are the – that is declared by the rules, I guess, to be a tantamount to an admission. Are we going to take a tantamount admission or are we going to say, you know, given the – that we're talking about the waiver of Sixth Amendment rights, it has to be something other than a tantamount admission. He has to stand up and say it in his own words. I believe Your Honor has identified it properly. The idea that it has to expressly come out of his mouth, of course, is nowhere to be found. I will – to answer the Court's question of the pre-sentence counsel. It's slightly implicit in Thomas, though, maybe, even though we're talking at a different time period. And I guess that's my – really my question. Well, in Thomas it was a little different in that the defendant throughout the proceedings first said he was going to object to the amounts. And then when it came time to admit the amounts, specifically identified and said, I cannot admit to what – do you agree with what the government says? I cannot agree with that. I do not admit to that amount. Because of that, it's very different in a situation like this, whereas – Well, this guy was never asked that question. Maybe that's where the hole is. He was never asked it at the plea and he was never asked it at the sentence. The government agrees that a better practice would have been for the Court to ask the question, do you agree with what the government – And frankly, I don't know what the answer would have been. And if I don't know what the answer would have been, maybe I can't say he did agree to it. I think – My instinct is at the time of the plea the answer would have been no, that this – that he was – that the statement was advised that he – it was a large amount, but he didn't say the amount. Whether it would have been otherwise at the time of the sentencing, I can't quite say, but maybe that's good enough to say that wasn't – that it wasn't a sufficient admission. I don't know that I agree with that we don't have a certainty as to what the answer would have been. I think it's clear that the answer he would have admitted it. Throughout this – there was no mystery to this change of plea. He was advised of a mandatory minimum for that amount. He was told that he was charged with that amount. The government read the amount of the factual basis to the extent he says only I possessed a large amount as opposed to I possess 4.3 kilograms of the amount. And I believe the only reason is because, as the Court indicates, he may or may not know exactly what the amount is. That's precisely what – that much is precisely what happened in Thomas, no? Where he pled to the – he pled guilty to the – to an indictment that included the amount, but he said, but I don't really know the amount. So – but he didn't say it wasn't the amount. He just said, I don't know the amount.  I believe that's correct, Your Honor. I believe in Thomas, the Court found that that was Rule 11 error or error – I'm forgetting the rule that – but was – the Court should have satisfied and found out what the amount was. Obviously, that defendant had been provided discovery. That defendant could be allowed to examine the drugs himself to find out the amounts. It's not necessary that defendant know exactly how much is there. It's only that that amount actually be there. That defendant in Thomas certainly could have stipulated that the amount of the drugs was what it was. He just was not comfortable doing so, and the Court didn't resolve the error. And then here, he certainly didn't stipulate it at the plea, and one has the sense that he wasn't comfortable stipulating to the plea, and he didn't. So I don't see any distinction at the plea level. If there's a distinction here, it has to be at the sentencing level, because it's my understanding that in Thomas he continued to say at the sentencing, no, no, no, I'm not agreeing that that's the amount. If I may, before turning to the sentencing level, if I may, at the plea level, I don't know that I agree with Your Honor just because of this. If the defendant wasn't comfortable with the amounts, why would he not have done what the defendant in Thomas did, which is at every point say, I don't know that I can admit that. When the Court says — Because nobody asked him. Nobody said to him, why do you say a large amount? You didn't say 500 grams. You said a large amount. Nobody asked him. I believe he was asked in this way, Your Honor. The Court specifically said to him, the mandatory minimum for this offense, what you're pleading to, is 10 years. If you go forward today, you're going to be subject to a 10-year mandatory minimum. That's true in Thomas. I mean, he pled to the amount that would have been 10 years. He just — but when he was flat-out asked, do you agree to the amount, he said no. Nobody asked this guy. And what he said was inconsistent with him knowing. Right. Well, I think the difference is, in this case, the defendant was advised of the mandatory minimum and what it was, and do you wish to go forward, and he stated that he did. If he says that he wishes to go forward and does not do what the defendant in Thomas does, the government would argue that that's an implicit admission. That, contributing with everything else, the fact that the government set forth the two bags that the defendant admitted to possessing, and the fact that the defendant admitted to possessing a large amount, the government believes that that is sufficient for the error. If the Court does disagree and wants to turn to the sentencing, it's clear at sentencing that he admitted to it. In his sentencing position, he specifically said he did not object to any of the provisions of the PSR, one of which attributed 4.3 kilograms of methamphetamine to him. He specifically asked the Court to impose that mandatory minimum. Now, again, the words, I admit to more than 500 grams, did not come out of his mouth. But everything he is doing at every stage of the proceedings until appeal has been a defendant who is admitting to exactly that. He may have said large amounts. He didn't know how much over 500 grams it was. But at no time was he saying, hey, wait a minute, only a five-year mandatory minimum applies, or no mandatory minimum applies because I believe it was a lesser amount. It was not. Kagan. Neither of those was what happened in Thomas. What happened in Thomas was all he kept saying was I don't know. I don't. I believe at first he said he would be contesting the amount. After he. Because I don't know. Right. Yeah. I may be going too back in how far in the facts in that case. But my understanding at first was he was stating that he would be contesting the amount. He then determined that he was going to plead guilty to everything. And at that point, he said, I, do you agree, the Court asked him, do you agree with everything the government said? And he said, no, I disagree. I don't know. As for the amount. As for what's in the bag. Because once the bag fell out of my hand, I'd never seen it again. He made clear that he had no present basis for knowing the weight of the cocaine base. He just didn't know. Right. And the difference, if we're talking about the sentencing level at this point, the difference between Thomas and this case is that there was, in Thomas, he contested the applicability of the ten-year mandatory minimum, whereas in this case, defendant has not. Defendant went along with it at every stage of the proceedings, and nor could he have. There is no reasonable factual argument that any amount that he possessed could have been less than that. Now, could it have been possible that at the time he didn't know exactly how much was in there? Yes, it absolutely could have been. But he's not required to know how much exactly is in there. It's only required that more than 500 grams be there. Defendant stipulated throughout that more than 500 grams were there through his actions in pleading guilty, in being advised of what applied, in not objecting at all to the PSR. What's important because of this argument that there is no reasonable basis for concluding is the third and fourth prong of the plain error analysis. Even if the Court finds that this was somehow error, in no way did it affect his substantial rights under Buckland, and in no way does it affect the public reputation of the judicial proceedings under Buckland, Valencia, and the Cotton decision. In fact, the Cotton decision says that the real threat to the public reputation of the proceedings is for a defendant, despite overwhelming and uncontroverted evidence of the drug quantity, is somehow given a sentence that is for lesser drug offenses because of an error that was not objected to at trial. And unless the Court has any questions, I'll submit your honor. Now that you're out of time. Thank you very much. Thank you. You seem to have .07 seconds, but we'll give you a minute. Thank you, Your Honors. With regard, I did take a look at the indictment in the excerpts of the record, and I apologize. It did allege the quantity. I was mistaken. But as the AUSA was kind enough to point out, in Velasco Heredia, I believe when we look at firearms cases, as he indicated, the maximum in a firearm case is life, whereas in a drug case, it basically goes up based upon the quantity, the maximum. I believe that enlightens the Court as to why there is that material distinction that I was making between the firearm cases and the drug cases. But more importantly at this point, when the Court is talking about this tantamount admission, implied admission, I think we have to determine what it is that we're Remember, this is all going back to the basics of appending or waiving the Sixth Amendment right to a jury trial. And the question is whether or not an implied admission for failing to object to a probation and sentencing report would be adequate. And I don't have the case in front of me, but the U.S. Supreme Court and the Ninth Circuit typically discourages or looks down upon or disfavors implied admissions of the fundamental Sixth Amendment right to a jury trial. And in this particular case, when there were waivers taken, the waiver was not taken as to the quantity. The admission was not obtained at the time that the waivers were taken, and there was no admission as to the quantity. But simply by failing to object to the probation and sentencing report at a subsequent time. But I guess the real question is, is this a tantamount or is it an actual admission? The PSR says there were 500 grams. He does not find – he says he has no objection to anything in the PSR. Yes. I.e., why isn't that saying, I agree, there were 500 grams? Because it's not waiving his right to a jury trial on that issue. He didn't admit to it. The defendant personally in court come up before the court and admit to that fact. And as the court has indicated, I don't have the sites, but there's a series of cases that look down upon or frown upon implied admissions of the right to a jury trial. And that's essentially what we're dealing with, is with the potential for an implied admission to a jury trial subsequent to the obtaining of the plea. And the plea basically containing the admissions which were the basis for the sentence in the first place. So based upon that, I would believe that there was error, the error was plain, and it would warrant a reversal and a remand for either a new plea with the appropriate procedures to be taken, or for Mr. Cardenas-Diaz to exercise a Sixth Amendment right to a jury trial. Thank you, Your Honor. Thank you, counsel. Interesting argument from the United States versus Cardenas-Diaz. The case is submitted. And we'll go on to the last case of the day.
judges: Canby,siler , Berzon